Kathryn G. Spelman, Esq. (Cal. Bar No. 154512)
Daniel H. Fingerman, Esq. (Cal. Bar No. 229683)
Mount & Stoelker, P.C.
RiverPark Tower, Suite 1650
333 West San Carlos Street
San Jose CA  95110-2740
Phone: (408) 279-7000
Fax:    (408) 998-1473
Email: kspelman@mount.com, dfingerman@mount.com

Counsel for San Francisco Technology Inc.

U.S. District Court
Northern District of California

| | |
|---|---|
| San Francisco Technology Inc.<br><br>                    Plaintiff<br><br>vs.<br><br>Aero Products International Inc., BP Lubricants USA Inc., BRK Brands Inc., Calico Brands Inc., Cooper Lighting LLC, Darex LLC, Dexas International Ltd., Dyna-Gro Nutrition Solutions, Fiskars Brands Inc., Global Concepts Inc., Homax Products Inc., Kimberly-Clark Corporation, Kraco Enterprises LLC, Lixit Corporation, Mead Westvaco Corporation, Nutrition 21 Inc., Oatey Co., Optimum Technologies Inc., Newell Rubbermaid Inc., Schick Manufacturing Inc., The Scotts Company LLC, Sterling International Inc., Vitamin Power Incorporated, Woodstream Corporation, 4-D Design Inc.<br><br>                    Defendants | Case No. 5:10-cv-02994-JF-PVT<br><br>**Plaintiff's Opposition to Motions Challenging Sufficiency of the Complaint**<br><br>Date:    November 19, 2010<br>Room:   Courtroom 3, 5th Floor<br>Judge:  Judge Jeremy Fogel |

Mount & Stoelker, P.C.
RiverPark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

# **Table of Contents**

Introduction.................................................................................................................1

Argument ...................................................................................................................2

I. Federal Law And Public Policy Prohibit False Marking ........................................2

    A. Public policy underlying the false marking statute.........................................2

    B. The elements of false marking: falsity and intent to deceive the public....................4

        (1) The falsity requirement: "marking an unpatented article" ...............................4

        (2) Intent to deceive the public ...........................................................4

        (3) Harm is not an element of a claim for false marking — and need not be alleged
           or proved...................................................................................5

II. Facts alleged in the complaint are presumed true at the pleading stage ....................6

III. Marking with expired patents is "false" under § 292............................................7

IV. False marking does not trigger the "fraud" pleading standard of Rule 9(b)...............7

V. Even if specificity is required under Rule 9, SF Tech's complaint meets this standard ...............11

    A. Knowledge and intent are never required to be pled with particularity....................11

    B. SF Tech's complaint alleges the marking element with particularity ....................12

VI. Individual arguments .............................................................................................15

    A. The false marking statute does not violate the "Take Care" clause of Article II....................15

    B. The false marking statute does not violate the "Appointments" clause of Article II...............16

    C. Under § 292, a marking is false if the product is not covered by *all* listed patents .................17

Conclusion ...................................................................................................................18

Mount & Stoelker, P.C.
RiverPark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

Plaintiff San Francisco Technology Inc. ("SF Tech") submits this consolidated opposition to the motions filed by several defendants which challenge the sufficiency of the complaint.[1]  These motions are opposed in a single brief because they raise identical issues.

**Introduction**

The law encourages manufacturers to inform the public about their patent rights.  Truthful and accurate patent markings are a key mechanism to inform the public about patent rights.  However, *falsely* marking an *unpatented* product — as if patent rights existed — is illegal.  False marking stifles competition, chills scientific research, and undermines federal public policy.

The defendants falsely represented to the public that their products are patented by marking their products with text like "Patent No. 4407478", as alleged in the complaint.  At least one listed patent in each marking was expired, which makes the markings false as a matter of law.  Manufacturers who choose to mark their products with patent numbers do so primarily to notify the public of their patent rights, because 35 U.S.C. § 287 provides financial incentives to do so.  That statute permits a patentee to recover enhanced money damages for infringement if has notified the public if its patent rights by *truthfully marking* its products.[2]  However, *false marking* with intent to deceive is illegal.  Section 292(a) of the Patent Act provides:[3]

> Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented, for the purpose of deceiving the public; … Shall be fined not more than $500 for every such offense.

It is beyond doubt that marking a product with an expired patent is false as a matter of law.  Courts have recognized this for over a century, culminating in the Federal Circuit's recent opinion in *Pequignot v. Solo Cup* "that an article covered by a now-expired patent is 'unpatented.'"[4]

The moving defendants incorrectly suggest that claims for false marking under the Patent Act sound in fraud and are therefore held to the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure.  They typically rely on two propositions: (1) the superficial, semantic

---

[1] Docket Nos. 180, 187, 197, 199, 203, 210, 214, 224, 233, 236, 237, 274, 280, 283, 285, 301, 315, 317
[2] *See e.g., Crown Packaging Technology Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1316 (Fed. Cir. 2009)
[3] 35 U.S.C. § 292(a)
[4] *Schwebel v. Bothe*, 40 F. 478, 479 (E.D. Mo. 1889); *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1361 (Fed. Cir. 2010) ("*Pequignot 4*")

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

1  similarity between "false marking" and the elements of fraud, and (2) a District Court decision which

2  assumed that proposition with no analysis.  Courts have examined this issue and reached the opposite

3  conclusion — holding that claims for false marking are subject to Rule 8, the notice pleading rule that

4  generally governs all pleadings in federal courts.  However, even if Rule 9(b) did apply, SF Tech's

5  complaint contains enough specificity to meet that standard.

6       Accordingly, each motion must be denied.  In the alternative, if the court finds that the

7  complaint is not sufficiently pled, the court must grant leave to amend.[5]

8                                **Argument**

9  **I. Federal Law And Public Policy Prohibit False Marking**

10    **A. Public policy underlying the false marking statute**

11       The law encourages patentees to inform the public about their patent rights.  If a manufacturer

12  makes a product that is protected by a patent, section 287 of the Patent Act gives it an incentive to

13  notify the public of its patent rights by marking the product with the applicable patent number.  If a

14  product is properly marked, section 287 provides that the patentee may recover enhanced damages

15  against infringers.[6]

16       The public policy of disseminating information about patent rights requires that patent

17  markings be *truthful*, so Congress outlawed *untruthful* markings over 150 years ago.  Borrowing from

18  earlier copyright statutes, Congress enacted the first false patent marking statute in 1842.[7]  Over the

19  next 110 years, this statute was amended several times, but the basic substance remained the same.

20  The current false marking statute was codified in 1952, in section 292 of the Patent Act:[8]

21            (a) Whoever marks upon, or affixes to, or uses in advertising in connection
22            with any unpatented article, the word "patent" or any word or number
             importing that the same is patented, for the purpose of deceiving the
23            public … [s]hall be fined not more than $500 for every such offense.

24            (b) Any person may sue for the penalty, in which event one-half shall go
25            to the person suing and the other to the use of the United States.

26 ─────────────────────

27 [5] *See e.g.*, *Von Saher v. Norton Simon Museum of Art at Pasadena*, 578 F.3d 1016, 1031 (9th Cir. Cal. 2009), *D-Beam v. Roller Derby Skate Corp.*, 316 Fed. Appx. 966, 969 (Fed. Cir. 2008)
[6] 35 U.S.C. § 287(a)
28 [7] Elizabeth I. Winston, *The Flawed Nature of the False Marking Statute*, 77 Tenn. L. Rev. 111, 112 (2009) ("Winston")
[8] 35 U.S.C. § 292

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

Twice in recent years, the Federal Circuit has examined the public policy underlying this statute.  In 2005, the Federal Circuit summarized the relevant Supreme Court precedent in *Clontech v. Invitrogen*:[9]

> Together, *Wine Ry.* and *Bonito Boats* explain that Congress intended the public to rely on marking as "a ready means of discerning the status of intellectual property embodied in an article of manufacture or design." *Bonito Boats*, 498 U.S. at 162.  *Lear* articulates federal patent policy, recognizing an "important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain."  395 U.S. at 670.   That interest is clearly injured by false marking because the act of false marking misleads the public into believing that a patentee controls the article in question (as well as like articles), externalizes the risk of error in the determination, placing it on the public rather than the manufacturer or seller of the article, and increases the cost to the public of ascertaining whether a patentee in fact controls the intellectual property embodied in an article.

> In each instance where it is represented that an article is patented, a member of the public desiring to participate in the market for the marked article must incur the cost of determining whether the involved patents are valid and enforceable.  Failure to take on the costs of a reasonably competent search for information necessary to interpret each patent, investigation into prior art and other information bearing on the quality of the patents, and analysis thereof can result in a finding of willful infringement, which may treble the damages an infringer would otherwise have to pay.

In 2009, the Federal Circuit further explained the public policy underlying the false marking statute in *Forest Group v. Bon Tool*:[10]

> The marking and false marking statutes exist to give the public notice of patent rights.  Congress intended the public to rely on marking as a ready means of discerning the status of intellectual property embodied in an article of manufacture or design.  Acts of false marking deter innovation and stifle competition in the marketplace.  If an article that is within the public domain is falsely marked, potential competitors may be dissuaded from entering the same market.  False marks may also deter scientific research when an inventor sees a mark and decides to forego continued research to avoid possible infringement.  False marking can also cause unnecessary investment in design around or costs incurred to analyze the

---

[9] *Clontech Labs. Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1356–57 and n6 (Fed. Cir. 2005) (discussing *Wine Ry. Appliance Co. v. Enterprise Ry. Equipment Co.*, 297 U.S. 387 (1936); *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989); and *Lear Inc. v. Adkins*, 395 U.S. 653 (1969))

[10] *Forest Group Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1302–1303 (Fed. Cir. 2009) ("*Forest Group 1*") (quotation marks and citations omitted)

validity or enforceability of a patent whose number has been marked upon a product with which a competitor would like to compete.

Thus, sound public-policy reasons exist to encourage truthful patent markings and to punish false patent markings.[11]  Section 292 requires this court to fine a false marker up to $500 per offense, as a punishment for its wrongful conduct and as a deterrent to similarly-situated manufacturers.[12]

**B. The elements of false marking: falsity and intent to deceive the public**

"The two elements of a § 292 false marking claim are (1) marking an unpatented article and (2) intent to deceive the public."[13]  Both elements may be proved by a preponderance of evidence.[14]

(1) The falsity requirement: "marking an unpatented article"

An article is falsely marked if it is not protected by at least one claim of each patent listed in the marking.[15]  "An article that was once protected by a now-expired patent is no different from an article that has never received protection from a patent.  Both are in the public domain."[16]  Accordingly, any marking with an expired patent is false as a matter of law.[17]

(2) Intent to deceive the public

The Federal Circuit defines intent to deceive as follows: "Intent to deceive is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true."[18]  Although intent to deceive is "subjective in nature", it is proved "by objective criteria."[19]  A plaintiff must show that the marker lacked a reasonable basis to believe that its marking was truthful at the time the marking was made.[20]  Once this is shown, there is a presumption that the marking was made with intent to deceive the public.[21]  The Federal Circuit first articulated this in *Clontech v. Invitrogen*:[22]

---

[11] *Presidio Components Inc. v. American Technical Ceramics Corp.*, 2010 U.S. Dist. Lexis 36127, 136–37 (S.D. Cal. 2010)
[12] *Forest Group Inc. v. Bon Tool Co.*, 2010 U.S. Dist. Lexis 41291, 6–7 (N.D. Tex. 2010) ("*Forest Group 2*"); *Presidio Components*, 2010 U.S. Dist. Lexis 36127, 136–37 (S.D. Cal. 2010)
[13] *Forest Group 1*, 590 F.3d at 1300
[14] *Pequignot 4*, 608 F.3d at 1363–64; *Forest Group 1*, 590 F.3d at 1300; *Clontech*, 406 F.3d 1347, 1352–53
[15] *Clontech*, 406 F.3d at 1352
[16] *Pequignot 4*, 608 F.3d at 1361 (editing marks omitted) (quoting *Pequignot v. Solo Cup Co.*, 646 F. Supp. 2d 790 (E.D. Va. 2009) ("*Pequignot 3*"))
[17] *Pequignot 4*, 608 F.3d at 1361
[18] *Clontech*, 406 F.3d at 1352
[19] *Clontech*, 406 F.3d at 1352
[20] *Pequignot 4*, 608 F.3d at 1362–63 (explaining *Clontech*, 406 F.3d at 1352–53)
[21] *Pequignot 4*, 608 F.3d at 1362–63 (explaining *Clontech*, 406 F.3d at 1352–53)

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

> Thus, objective standards control and the fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough to warrant drawing the inference that there was a fraudulent intent. Thus, under such circumstances, the mere assertion by a party that it did not intend to deceive will not suffice to escape statutory liability.  Such an assertion, standing alone, is worthless as proof of no intent to deceive where there is knowledge of falsehood.   But in order to establish knowledge of falsity the plaintiff must show by a preponderance of the evidence that the party accused of false marking did not have a reasonable belief that the articles were properly marked (i.e., covered by a patent).

Thus, a plaintiff must initially prove that the marker lacked a reasonable basis to believe the marking was true or had sufficient information to know that the marking was false.[22] Once the plaintiff meets that burden, the marker is presumed to have intended to deceive the public.[24] At that point, the burden shifts to the marker to prove (if it can) that it had some different intent.[25] "[T]he presumption cannot be rebutted by 'the mere assertion by a party that it did not intend to deceive.'"[26] Rather, the marker must come forward with "credible evidence" that it had a legitimate purpose for placing a false patent marking on its product.[27]

Since intent to deceive can be proved by showing a lack of a reasonable basis to believe that a marking was true, a plaintiff may plead intent by alleging facts that show (when unrebutted) a lack of a reasonable basis to believe that a marking was true.[28] Since it is beyond dispute that a marking with an expired patent is false, there can be no reasonable basis to believe such a marking is true.[29] Accordingly, allegations of marking with an expired patent are sufficient to allege that a defendant lacked a reasonable basis to believe its marking was true — which is the same as alleging intent to deceive under the applicable presumption.[30]

(3) Harm is not an element of a claim for false marking — and need not be alleged or proved

As discussed above, "[t]he two elements of a § 292 false marking claim are (1) marking an unpatented article and (2) intent to deceive the public," and both elements may be proved by a

---

[22] *Clontech*, 406 F.3d at 1352–53 (quotation marks and citations omitted)
[23] *Clontech*, 406 F.3d at 1352–53
[24] *Pequignot 4*, 608 F.3d at 1362–63
[25] *Pequignot 4*, 608 F.3d at 1362–64
[26] *Pequignot 4*, 608 F.3d at 1363; *Clontech*, 406 F.3d 1347, 1352–53
[27] *Pequignot 4*, 608 F.3d at 1363
[28] *Clontech*, 406 F.3d at 1352–53
[29] *Pequignot 4*, 608 F.3d at 1361
[30] *Pequignot 4*, 608 F.3d at 1362–64; *Clontech*, 406 F.3d 1347, 1352–53

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

preponderance of evidence.[31]  Harm is not an element of a claim for false marking — and therefore need not be pled in the complaint or proved at trial.[32]  As a matter of formal constitutional theory, injury in fact to the government is required to support the government's standing to sue; and, when such injury is present, the *qui tam* assignment to the relator under § 292(b) confers that standing on SF Tech.[33]  This requirement is satisfied when a violation of § 292 is pled, so injury need not be separately alleged.[34]  The Federal Circuit explained in *Stauffer v. Brooks Brothers*: "Congress has, by enacting section 292, defined an injury in fact to the United States.  In other words, a violation of that statute inherently constitutes an injury to the United States."[35]  Accordingly, the pleading of a violation of § 292 is, standing alone, also a sufficient pleading of injury to satisfy standing concerns.

## II. Facts alleged in the complaint are presumed true at the pleading stage

At the pleading stage, the court must assume to be true all facts alleged in the complaint, and the defendant may not seek dismissal under Rule 12(b)(6) by disputing those facts.  Accordingly, if a plaintiff pleads that a marking was false and that the defendant had the requisite state of mind — i.e., that the defendant lacked a reasonable basis to believe the marking was truthful — then a motion under Rule 12(b)(6) must be denied.  As the court explained in *Simonian v. Oreck*:[36]

> Having sufficiently pled that defendants have falsely marked a product with an expired patent, Simonian needs only to have sufficiently alleged defendants' deceptive intent.  "[T]he combination of a false statement and knowledge that the statement was false creates a rebuttable presumption of intent to deceive the public, rather than irrebuttably proving such intent." *Pequignot*, 608 F.3d at 1362–63.  Simonian's complaint specifically states that the '902 Patent and the '315 Patent are expired and falsely marked on products, and that defendants had knowledge that these patents were expired and therefore the marks are false.  By alleging that defendants had knowledge of their false marking and that the marks were false creates a rebuttable presumption of deceptive intent.  Because defendants have sufficiently, albeit generally, alleged deceptive intent and for the other reasons discussed herein, defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is denied.

---

[31] *Forest Group 1*, 590 F.3d at 1300; *Pequignot 4*, 608 F.3d at 1363–64; *Clontech*, 406 F.3d 1347, 1352–53
[32] *Forest Group 1*, 590 F.3d at 1300; *Pequignot 4*, 608 F.3d at 1363–64; *Clontech*, 406 F.3d 1347, 1352–53
[33] *Stauffer v. Brooks Brothers Inc.*, --- F.3d ---, 2010 U.S. App. Lexis 18144, 10–12 (Fed. Cir. 2010)
[34] *Stauffer*, --- F.3d ---, 2010 U.S. App. Lexis 18144, 11
[35] *Stauffer*, --- F.3d ---, 2010 U.S. App. Lexis 18144, 11
[36] *Simonian v. Oreck Corp.*, 2010 U.S. Dist. Lexis 86832, 12–13 (N.D. Ill. 2010); *see also Simonian v. Bunn-O-Matic Corp.*, 2010 U.S. Dist. Lexis 86216, 12–16 (N.D. Ill. 2010)

### III. Marking with expired patents is "false" under § 292

It is beyond question "that an article covered by a now-expired patent is unpatented. … An article that was once protected by a now-expired patent is no different from an article that has never received protection from a patent.  Both are in the public domain."[37]  The Federal Circuit explains:[38]

> [M]any of the same public policies apply to falsely marked products with inapplicable patent numbers and expired patent numbers. … [D]etermining the expiration date of a patent can, at times, be difficult. The date of the patent grant is shown on the first page of a patent, but its term currently also depends on the date it was filed; in 1994, the effective term of a patent changed from seventeen years commencing at issuance to twenty years from filing. *See* 35 U.S.C. § 154(a)(2); *Wyeth v. Kappos*, 591 F.3d 1364, 1366 (Fed. Cir. 2010).  Furthermore, the term depends on whether there are patent term adjustments and whether the patent owner has paid maintenance fees.  *See* 35 U.S.C. § 154(a)(2), (b).  Thus, as with a never-patented article, an article marked with an expired patent number imposes on the public "the cost of determining whether the involved patents are valid and enforceable." *Clontech*, 406 F.3d at 1357 n.6.  Solo's products that were once covered by now-expired patents are therefore "unpatented" within the meaning of the statute.

This holding is no surprise, since it merely reaffirms over a century of precedent.[39]  The District Court in *Pequignot* held the same in a published opinion.[40]  This has been the law at least since 1889, when a court in the Eastern District of Missouri wrote in *Schwebel v. Bothe* that a product formerly covered by an expired patent should be marked only if the marking disclaims any current patent protection — with language such as, "A patent was heretofore obtained on this machine, but it has expired."[41]

### IV. False marking does not trigger the "fraud" pleading standard of Rule 9(b)

The pleading standard in federal court is governed by Rule 8, which requires "a short and plain statement of the claim".[42]  The Supreme Court has held:[43]

> Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions.   Rule 9(b), for example, provides for greater

---

[37] *Pequignot 4*, 608 F.3d at 1361 (quoting the lower court opinion; quotation and editing marks omitted)
[38] *Pequignot 4*, 608 F.3d at 1362
[39] *See Schwebel*, 40 F. at 479
[40] *Pequignot v. Solo Cup Co.*, 540 F. Supp. 2d 649 (E.D. Va. 2008) ("*Pequignot 1*")
[41] *Schwebel*, 40 F. at 479
[42] Fed. R. Civ. P. (FRCP) 8(a)(2)
[43] *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (footnote omitted)

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

1   particularity in all averments of fraud or mistake.  This Court, however,
    has declined to extend such exceptions to other contexts.

2

3   Accordingly, "a short and plain statement of the claim" is sufficient, unless false marking fits

4   the "limited exception" of fraud in Rule 9(b).  The defendants rely on the superficial, semantic

5   similarity between the elements of fraud and false marking, such as "intent to deceive" to suggest that

6   false marking is a species of fraud.  Although perhaps superficially attractive, this argument fails

7   when examined.

8   Many torts that include false or deceptive conduct are not fraud and are therefore governed by

9   the "simplified pleading standard" of Rule 8.[44]  For example, Rule 8 applies to claims for False

10  Advertising and claims for False Designation of Origin.[45]  Similarly, a claim for "deceptive acts or

11  practices in the conduct of any business" need not be pled with particularity because it "extends well

12  beyond common-law fraud to cover a broad range of deceptive practices" and "does not require proof

13  of the same essential elements (such as reliance) as common-law fraud".[46]  When the Federal Circuit

14  held in *Exergen v. Wal-Mart* that claims seeking a declaration of patent unenforceability due to

15  inequitable conduct must be pled with particularity under Rule 9, it expressly relied on a long line of

16  cases holding that inequitable conduct is a species of fraud and that its elements are similar to fraud.[47]

17  The Federal Circuit has expressly distinguished the evidentiary standard that applies to false marking

18  from the evidentiary standard that applies to inequitable conduct.[48]  This distinction demonstrates that

19  the Federal Circuit intends for the law of false marking to develop separately from the law of

20  inequitable conduct.

21  "The two elements of a § 292 false marking claim are (1) marking an unpatented article and

22  (2) intent to deceive the public."[49]  Since false marking also "does not require proof of the same

23  essential elements (such as reliance) as common-law fraud",[50] the "limited exception" of Rule 9 does

24

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

25

26  [44] *Swierkiewicz*, 534 U.S. at 513
    [45] *Jurin v. Google Inc.*, 2010 U.S. Dist. Lexis 18208 (E.D. Cal 2010)
27  [46] *See e.g.*, *Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. N.Y. 2005)
    [47] *Exergen Corp. v. Wal-Mart Stores Inc.*, 575 F.3d 1312 (Fed. Cir. 2009)
28  [48] *Pequignot 4*, 608 F.3d at 1363–64
    [49] *Forest Group 1*, 590 F.3d at 1300
    [50] *Pelman*, 396 F.3d at 511

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

1   not apply.[51]  Thus, several District Courts have applied Rule 8 to complaints for false marking and

2   rejected their defendants' attempts to apply Rule 9.

3       The defendants chiefly rely on an unpublished District Court decision in *Juniper Networks v.*

4   *Shipley* to argue that Rule 9 applies to false marking claims.[52]  The defendants also cite a host of

5   other cases that do little more than quote *Juniper Networks*.[53]  Before that 2009 unpublished decision,

6   there was apparently "no case law that has required the Rule 9 level of pleading to claims for false

7   marking."[54]  The *Juniper Networks* court assumed that false marking sounds in fraud because of the

8   semantic similarities.  However, it never compared the elements of false marking to the elements of

9   fraud.  For support, it cited cases requiring the Rule 9 standard for claims having a long judicial

10   history of being species of fraud and having similar elements — such as fraud upon the stock

11   market[55] and patent unenforceability for fraud upon the U.S. Patent & Trademark Office.[56]  The

12   *Juniper Networks* court never went beyond the semantic similarity to consider how the elements of

13   false marking compare to the elements of fraud.  Had it done so, it would have reached the same

14   conclusion as the courts in *Astec v. Power-One* and *Third Party Verification Inc. v. SignatureLink*.[57]

15   Both of those courts searched the caselaw for precedent applying Rule 9 to false marking, and they

16   found none.  Without performing the same review, the *Juniper Networks* court completely missed

17   one ruling and summarily dismissed the other in a footnote.[58]

18       The *Astec* court did the required analysis, comparing false marking to fraud, and determined

19   them to be so different that Rule 8, not Rule 9, should apply.[59]  It found not a single case holding that

20

21

---

51 *Swierkiewicz*, 534 U.S. at 513
22   52 *Juniper Networks v. Shipley*, 2009 U.S. Dist. Lexis 40978 (N.D. Cal. 2009); *see e.g.*, McNeil's motion, Docket No. 180 at page 15
23   53 *See, e.g.*, *Brinkmeier v. BIC Corp., et al.*, 2010 WL 3360568, *8 (D. Del. Aug. 25, 2010); *Shizzle Pop LLC v. Wham-O Inc.*, 2010 U.S. Dist. Lexis 86924, 6 (C.D. Cal. 2010); *Advanced Cartridge Technologies, LLC  v. Lexmark Intern., Inc.*, 2010 WL 2640137, *1 (M.D. Fla. June 30, 2010); *Simonian v. Cisco Sys., Inc.*, 2010 WL 2523211, *3 (N.D. Ill. June 17, 2010).
24   54 *Third Party Verification Inc. v. SignatureLink Inc.*, 492 F. Supp. 2d 1314, 1327 (M.D. Fla. 2007), affirmed in *Third Party Verification Inc. v. SignatureLink Inc.*, 492 F. Supp. 2d 1314 (M.D. Fla. 2007)
25   55 *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982 (9th Cir. 2008)
26   56 *Eisai Co., Ltd. v. Teva Pharmaceuticals USA, Inc.*, 557 F. Supp.2d 490, 493 (D.N.J. 2008)
27   57 *Astec America Inc. v. Power-One Inc.*, 2008 U.S. Dist. Lexis 30365 (E.D. Tex. 2008); *Third Party Verification Inc. v. SignatureLink Inc.*, 492 F. Supp. 2d 1314, 1327 (M.D. Fla. 2007), affirmed in *Third Party Verification Inc. v. SignatureLink Inc.*, 492 F. Supp. 2d 1314 (M.D. Fla. 2007)
28   58 *Juniper Networks*, 2009 U.S. Dist. Lexis 40978, *12, footnote 3
59 *Astec*, 2008 U.S. Dist. Lexis 30365

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

false marking should be pled with particularity.[60]  The reasoning of *Astec* is persuasive:[61]

> Power-One also moves to dismiss Astec's false marking claim for failing to plead the claim with specificity.  See Fed. R. Civ. P. 9(b).  In the alternative, Power-One moves for a more definite statement.  Power-One argues that because a false marking claim requires an allegation of deceptive intent, it is similar to an averment of fraud, which must be pled with specificity.  However, Power-One provides no case authority for its proposition linking a false marking claim to an averment of fraud.  On the other hand, courts have generally interpreted the scope of Rule 9(b) as limited to allegations of fraud and mistake.

The *Astec* court is not alone — other District Courts have also applied the "simplified pleading standard" of Rule 8 to claims for false marking.[62]  Accordingly, this court should follow the great weight of this precedent and apply Rule 8 to SF Tech's complaint for false marking.

Some defendants seem to think the Federal Circuit held in *Stauffer* that a false marking complaint must satisfy the fraud pleading under Rule 9.  The *Stauffer* court made no such ruling.  In *Stauffer*, the Federal Circuit reversed all of the District Court's holdings and remanded for further proceedings.  The Federal Circuit expressly remanded for the District Court to determine Brooks Brothers' motion to dismiss.  In doing so, it quoted the District Court's footnote, where the District Court recited Brooks Brothers' argument that Rule 9 (as opposed to Rule 8) applies.[63]  However, in that quoted passage, the District Court expressly stated that it was declining to decide that motion.  Taken in context, it is clear that the District Court was simply restating Brooks Brothers' argument as a way of identifying the motion being referred-to.  The District Court did not purport to decide whether that argument had merit.  Since the District Court never decided that question and the Federal Circuit expressly remanded with instructions for the District Court to do so, neither court has held whether Rule 8 or Rule 9 should apply.

In *Simonian v. BP Lubricants*, the defendant's motion to dismiss on similar grounds was

---

[60] *Astec*, 2008 U.S. Dist. Lexis 30365, 26
[61] *Astec*, 2008 U.S. Dist. Lexis 30365, 32–33
[62] *See e.g.*, *U.S. ex rel. FLFMC LLC v. Ace Hardware Corp.*, 2010 U.S. Dist. Lexis 45453 (W.D. Pa. 2010) (analyzing the complaint under the Rule 8 standard); *Brinkmeier v. Graco Children's Products Inc.*, 2010 U.S. Dist. Lexis 12916 (D. Del. 2010) (analyzing the complaint under the Rule 8 standard); *Third Party Verification Inc. v. SignatureLink Inc.*, 492 F. Supp. 2d 1314, 1327 (M.D. Fla. 2007) (rejecting the application of Rule 9 to false marking claims), affirmed in *Third Party Verification Inc. v. SignatureLink Inc.*, 492 F. Supp. 2d 1314 (M.D. Fla. 2007)
[63] *Stauffer v. Brooks Brothers, Inc.*, --- F.3d ---, 2010 U.S. App. Lexis 18144, 19 (quoting *Stauffer v. Brooks Brothers Inc.*, 615 F. Supp. 2d 248, 251 n. 1 (S.D.N.Y. 2009))

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

1  denied.[64]  BP Lubricants filed a petition for a writ of mandamus in the Federal Circuit, seeking a

2  ruling on whether Rule 8 or Rule 9 applies.  That petition catalogs a split in the District Courts on this

3  question.  This is further evidence that the Federal Circuit did not already decide this question.

4  **V. Even if specificity is required under Rule 9, SF Tech's complaint meets this standard**

5       If the court determines that Rule 9 applies to claims for false marking, then it must still deny

6  the motions to dismiss because SF Tech has already pled its claims with sufficient particularity.

7      **A. Knowledge and intent are never required to be pled with particularity**

8       "The two elements of a § 292 false marking claim are (1) marking an unpatented article and

9  (2) intent to deceive the public."[65]  The defendants misread the statute and rules when they argue that

10  SF Tech did not allege their intent with particularity.  Rule 9(b) states: "Malice, intent, knowledge,

11  and other conditions of a person's mind may be alleged generally."  Thus, SF Tech may allege the

12  defendants' knowledge and intent to deceive "generally", and its complaint does so.

13       As Rule 9 permits, the complaint alleges "generally" that each defendant "marks its products

14  with patents to induce the public to believe that each such product is protected by each patent listed

15  and with knowledge that nothing is protected by an expired patent.  Accordingly, [each defendant]

16  falsely marked its products with intent to deceive the public."[66]  This is all that Rule 9 requires

17  concerning knowledge or intent.

18       Rule 9 cannot require a plaintiff to plead more facts that it must prove at trial to prevail on a

19  claim.  To prevail at trial, SF Tech must prove by a preponderance of the evidence: (1) the markings

20  are false, and (2) the defendants had sufficient knowledge at the time of the markings to determine

21  that they were false.[67]  Proof of these facts creates a presumption that each defendant intended to

22  deceive the public — which completes SF Tech's *prima facie* case for false marking.[68]  The burden

23  then shifts to the defendants to adduce evidence (if any exists) that they lacked intent to deceive.[69]

24  Since marking an article with an expired patent is false as a matter of law, there can be no reasonable

---

[64] *Simonian v. BP Lubricants USA Inc.*, N.D. Ill. Case No. 1:10-cv-01258.
[65] *Forest Group 1*, 590 F.3d at 1300
[66] Complaint at ¶¶ 73, 80, 84, 88, 100, 104, 109, 113, 120, 131, 136, 147, 151, 155, 170, 183
[67] *Forest Group 1*, 590 F.3d at 1300; *Pequignot 4*, 608 F.3d at 1362–63; *Clontech Labs. Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005)
[68] *Pequignot 4*, 608 F.3d at 1362–63 ("under *Clontech* and under Supreme Court precedent, the combination of a false statement and knowledge that the statement was false creates a rebuttable presumption of intent to deceive the public")
[69] *Pequignot 4*, 608 F.3d at 1363

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

basis to believe such markings were true.[70]  At the pleading stage, SF Tech's allegations are unrebutted, because the court is required to assume that all alleged facts are true.  Thus, a presumption applies that each defendant intended to deceive the public.[71]

This same conclusion was reached by two courts in *Simonian v. Oreck* and *Simonian v. Bunn-O-Matic*.[72]  Both of those courts examined complaints very similar to SF Tech's complaint.  The *Oreck* court explained:[73]

> Having sufficiently pled that defendants have falsely marked a product with an expired patent, Simonian needs only to have sufficiently alleged defendants' deceptive intent.  "[T]he combination of a false statement and knowledge that the statement was false creates a rebuttable presumption of intent to deceive the public, rather than irrebuttably proving such intent." *Pequignot*, 608 F.3d at 1362–63.  Simonian's complaint specifically states that the '902 Patent and the '315 Patent are expired and falsely marked on products, and that defendants had knowledge that these patents were expired and therefore the marks are false.  By alleging that defendants had knowledge of their false marking and that the marks were false creates a rebuttable presumption of deceptive intent.   Because defendants have sufficiently, albeit generally, alleged deceptive intent and for the other reasons discussed herein, defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is denied.

**B. SF Tech's complaint alleges the marking element with particularity**

The first element of a false marking claim is "marking an unpatented article".[74]  The Federal Circuit expressly ruled "that an article covered by a now-expired patent is unpatented" for purposes of § 292.[75]  The complaint alleges that each defendant has marked its products with expired patents. The complaint specifically identifies each product, each expired patent, and the date each patent expired.  It goes on to allege that each defendant is selling or advertising the identified products in 2010 — i.e., at the time the complaint was filed in March 2010 — which is long after each patent had expired.

No more specific allegations could exist that the products are marked with expired patents. The timing of the expirations and of the retail sales and advertising of each product is specifically

---

[70] *Pequignot 4*, 608 F.3d at 1361
[71] *Pequignot 4*, 608 F.3d at 1363
[72] *Simonian v. Oreck Corp.*, 2010 U.S. Dist. Lexis 86832; *Simonian v. Bunn-O-Matic Corp.*, 2010 U.S. Dist. Lexis 86216
[73] *Simonian v. Oreck Corp.*, 2010 U.S. Dist. Lexis 86832, 12–13
[74] *Forest Group 1*, 590 F.3d at 1300
[75] *Pequignot 4*, 608 F.3d at 1361 (quoting the lower court opinion; internal quotation marks omitted)

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

alleged.  The most reasonable inference from these allegations is that the false marking is occurring

after each patent's expiration.  Accordingly, SF Tech alleges upon information and belief that the

marking occurred after each patent's expiration.  "Pleading on 'information and belief' is permitted

under Rule 9(b) when essential information lies uniquely within another party's control, but only if

the pleading sets forth the specific facts upon which the belief is reasonably based."[76]  Courts have

recognized for over 120 years that dates and times of patent marking need not be alleged in a

complaint because those "acts are peculiarly within the knowledge of the defendant, and cannot be

exactly stated by the plaintiff."[77]  The same is true for the names of the individual persons involved in

the marking:[78]

> Furthermore, assuming that a false marking claim must be pled with
> particularity, Power-One seeks identification of who falsely marked the
> products with deceptive intent.  Astec has identified in its Complaint that
> Power-One is the corporate entity responsible for Astec's false marking
> claim.  Greater specificity is not necessary at this early stage of the
> proceedings.

To hold otherwise would limit *qui tam* cases for false marking to whistleblowers — company

insiders who decide to expose their employers' illegal conduct.  This would be contrary to Congress's

intent, where it expressly provided that "Any person may sue for the penalty."[79]

Even if a "fraudulent scheme" must be alleged under Rule 9(b), SF Tech has also met this

standard.  The court in *Simonian v. Oreck* assumed (without deciding) that Rule 9(b) applies and

explained what is required to allege a "fraudulent scheme" in a false marking case:[80]

> Defendants argue that Simonian has not sufficiently alleged fraud under
> Fed. R. Civ. P. 9(b). … Under Rule 9(b), a complaint's fraudulent scheme
> should include the who, what, when, where and how.  Defendants assert
> that Simonian has failed to allege the who, what, when, where and how to
> satisfy Rule 9(b).  The court disagrees.  Simonian has alleged that
> defendants (who) have deliberately and falsely marked (how), at least the
> Oreck XL Classic Power Team vacuum cleaner (what) with an expired
> patent, and have marketed and are currently marketing the falsely marked
> product(s) (when) throughout the Northern District of Illinois and the rest

---

[76] *Exergen*, 575 F.3d at 1331
[77] *Fish v. Manning*, 31 F. 340, 341 (S.D.N.Y. 1887)
[78] *Astec*, 2008 U.S. Dist. Lexis 30365, 33–34
[79] 35 U.S.C. § 292(b); *Stauffer*, --- F.3d ---, 2010 U.S. App. Lexis 18144, 11–12
[80] *Simonian v. Oreck Corp.*, 2010 U.S. Dist. Lexis 86832, 11–12 (quotation marks, citations, and footnote omitted)

of the United States (where). Simonian has alleged the deceptive intent generally, which conforms to the requirements of Rule 9(b). For the above-mentioned reasons, the court rejects defendants' argument that the complaint is insufficient under Rule 9(b).

SF Tech has specifically pled that the accused markings and advertisements were done after each patent's expiration date and that each accused product is being sold retail long after those expirations. No plaintiff can know the exact dates of a defendant's markings without discovery.[81] SF Tech made specific factual allegations of the information that could, in principle, be within the knowledge of any plaintiff at the pleading stage.[82] That is all that Rule 9 requires.

Courts have denied motions to dismiss against complaints that allege far less than SF Tech's complaint in this case. For example, in *FLFMC v. Ace Hardware*, the defendant moved to dismiss a complaint on the same grounds as the motions in this case. That court denied the motion, approving these allegations as sufficient:[83]

> Pursuant to the provisions of 35 U.S.C. § 154 then in effect, the '148 patent expired on October 22, 1974. Defendant, or its agents, manufacture, sell, offer to sell, and/or advertise the product referred to as Trimline® Edger. The Trimline® Edger is marked with patent No. 2,810,148. … After October 22, 1974, Defendant or its agents marked upon, affixed to, or used in advertising in connection with items, including at least the Trimline® Edger, phrases referring to the 2,810,148 patent, implying that the item was patented. Defendant or its agents did so for the purpose of deceiving the public.

Moreover, Judge Seeborg of this court has concluded that SF Tech's allegations are sufficient. In *SF Tech v. Adobe*, SF Tech's complaint for false marking contained allegations substantially identical to its allegations in this case.[84] For example, SF Tech alleged against one defendant:

> 113. Upon information and belief, Super Swim sells swimming products such as its "Super Swim Pro" product.

> 114. Super Swim advertises the Super Swim Pro product on its web site, www.superswimpro.com. In its advertisements, Super Swim marks its product as follows: "US Patent 4-530-497 New Patents Pending".

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

---

[81] *Fish*, 31 F. at 341

[82] *Fish*, 31 F. at 341

[83] *U.S. ex rel. FLFMC LLC v. Ace Hardware Corp.*, 2010 U.S. Dist. Lexis 45453 (W.D. Pa. 2010); Request For Judicial Notice (RJN) exhibit 2 at ¶¶ 8–13

[84] *San Francisco Technology Inc. v. Adobe Systems Inc.*, Case No. 5:09-cv-06083-RS-HRL (N.D. Cal.); *see also San Francisco Technology Inc. v. Adobe Systems Incorporated*, 2010 U.S. Dist. Lexis 40216 (N.D. Cal. 2010)

1

Upon information and belief, U.S. Patent No. 4,530,497 expired no later than 4/22/2003.

2

3

115.   The above advertisements on Super Swim's web site are also marked "© 2008 Copyright SuperSwimPro".   Upon information and belief, Super Swim made decisions to mark its products in the manner described above in at least 2008 when these advertisements were written and again each time each advertisement was revised.   Thus, Super Swim made decisions to mark its product in the above-described advertisements long after U.S. Patent No. 4,530,497 expired.

4

5

6

7

The defendants in *SF Tech v. Adobe* filed motions to dismiss that are substantially similar to

8

the defendants' motions in this case.   In the hearing on those motions, Judge Seeborg expressed doubt

9

that it was necessary to reach the question of whether Rule 8 or Rule 9 governs this pleading.[85]   Judge

10

Seeborg went on to explain:[86]

11

12

The pleading is detailed as to the products at issue and where the alleged mismarking could have been found in websites and packaging and the like.   To the extent that the defendants seem to suggest that the deficiency lies in the failure to allege scienter, deliberate and knowing mismarking, I think that seems to be borrowing from the PSLRA context, and I don't really think it applies in this instance where, under 9(b), at least my reading is you can allege malice, intent, knowledge, in a much more general sense, as opposed to the securities heightened requirements.

13

14

15

16

Accordingly, SF Tech's complaint passes muster, and the defendants' motions must be denied.

17

**VI. Individual arguments**

18

A few points are necessary that apply only to one (or a few) individual defendants.   This

19

section addresses those points.

20

**A. The false marking statute does not violate the "Take Care" clause of Article II**

21

Several defendants argue that the false marking statute would violate the "Take Care" clause

22

of Article II of the U.S. Constitution if *qui tam* suits are permitted.   This argument was exhaustively

23

briefed in *Pequignot* by the parties — and by the United States, which intervened to support the

24

constitutionality of § 292.   The *Pequignot* court held that § 292 does not violate the "Take Care"

25

clause.   Instead of rehashing the conclusions of the *Pequignot* court and the exhaustive arguments of

26

Mr. Pequignot and the government, SF Tech submits their briefs with the accompanying Request For

27

28

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

---

[85] Transcript at 9:9–14 (Request For Judicial Notice, Exhibit 1)
[86] Transcript at 9:15–24 (Request For Judicial Notice, Exhibit 1)

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

1   Judicial Notice and incorporates by reference their arguments and evidence.[87]

2          The Central District of California reached the same holding in *Shizzle Pop v. Wham-O*.[88]

3   Citing *Pequignot*, the court reasoned that because a *qui tam* relator can bring only one type of civil

4   suit and "the Executive Branch has the ability to assert its interests through procedures available

5   under the Federal Rules of Civil Procedure," there is minimal intrusion onto the Executive Power

6   and, thus, the statute is constitutional.[89]

7          The Northern District of Illinois also reached the same holding in *Zojo Solutions v. Stanley*

8   *Works*.[90]   The *Zojo* court found the argument so baseless that it denied the defendant's motion before

9   the plaintiff had even filed its opposition: "Because this Court is bound to follow the teaching of the

10  Federal Circuit in this action under the patent laws, and because *Forest Group* effectively answers —

11  and rejects — both of those contentions, this Court need not await Zojo's response to the motion to

12  dismiss.  Instead it will simply quote the relevant portions of the *Forest Group* opinion."[91]

13         If the court entertains this argument, the court should certify to the appropriate U.S. attorney

14  that the constitutionality of a federal statute has been questioned.  The United States is authorized to

15  intervene in any federal court action in which the constitutionality of an Act of Congress is drawn

16  into question.[92]  "The court must, under 28 U.S.C. § 2403, certify to the appropriate attorney general

17  that a statute has been questioned."[93]  The United States is entitled to a reasonable period of time to

18  decide whether to intervene.[94]  However, the court may *reject* the constitutional challenge "[b]efore

19  the time to intervene expires," as the *Zojo* court did.[95]

20  **B. The false marking statute does not violate the "Appointments" clause of Article II**

21         Several defendants argue that the false marking statute would violate the "Appointments"

22  clause of Article II of the U.S. Constitution if *qui tam* suits are permitted.  In evaluating whether the

23  False Claims Act's qui tam provisions violate the "Appointments" clause, the Ninth Circuit concluded

24  ---
[87] RJN exhibits 3–5

25  [88] *Shizzle Pop*, 2010 U.S. Dist. Lexis 86924, 8–9
    [89] *Shizzle Pop*, 2010 U.S. Dist. Lexis 86924, 8–9

26  [90] *Pequignot v. Solo Cup Co.*, 640 F. Supp. 2d 714 (E.D. Va. 2009) ("*Pequignot 2*"); *Zojo Solutions Inc. v. The Stanley Works*, 2010 U.S. Dist. Lexis 46407 (N.D. Ill. 2010)

27  [91] *Zojo*, 2010 U.S. Dist. Lexis 46407, 3
    [92] 28 U.S.C. § 2403(a)
    [93] Fed. R. Civ. P. 5.1(b)

28  [94] Fed. R. Civ. P. 5.1(c)
    [95] Fed. R. Civ. P. 5.1(c)

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

1   that a *qui tam* relator who "is not appointed by Congress, receives no federal salary, and serves for no

2   specified term" does not exercise enough authority to be considered an officer who must be appointed

3   by the President.[96]   The court reasoned that "the *qui tam* scheme does not threaten the interest in

4   preventing the exercise of unchecked or unbalanced government power which underlies the

5   Appointments Clause."[97]   In evaluating the false marking statute's *qui tam* provision, the Central

6   District of California adopted the same reasoning in *Shizzle Pop v. Wham-O* in finding the statute

7   constitutional under the Appointments Clause.[98]

8        Instead of rehashing the exhaustive arguments of Shizzle Pop — which the *Shizzle Pop* court

9   correctly adopted — SF Tech submits its brief with the accompanying Request For Judicial Notice

10  and incorporates by reference its arguments and evidence.[99]

11       If the court entertains this argument, the court should certify to the appropriate U.S. attorney

12  that the constitutionality of a federal statute has been questioned.   The United States is authorized to

13  intervene in any federal court action in which the constitutionality of an Act of Congress is drawn

14  into question.[100]   "The court must, under 28 U.S.C. § 2403, certify to the appropriate attorney general

15  that a statute has been questioned."[101]   The United States is entitled to a reasonable period of time to

16  decide whether to intervene.[102]

17  **C. Under § 292, a marking is false if the product is not covered by *all* listed patents**

18       Calico mysteriously spent ink arguing that marking with expired patents is not "false" under

19  § 292 if it is combined with additional markings of unexpired patents.   The Federal Circuit held

20  otherwise in *Clontech v. Invitrogen* and further explained this rule in *Forest Group v. Bon Tool*.[103]   A

21  manufacturer is not permitted to mix false markings with true markings because the manufacturer,

22  not the public, bears the burden of ensuring that patent markings are truthful.[104]   A manufacturer may

---

[96] *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 759 fn. 21 (9th Cir. Wash. 1993) (quoting *Auffmordt v. Hedden*, 137 U.S. 310, 327 (1890)).
[97] *Ex rel. Kelly*, 9 F.3d at 758.
[98] *Shizzle Pop*, 2010 U.S. Dist. Lexis 86924, 8
[99] RJN exhibit 6
[100] 28 U.S.C. § 2403(a)
[101] Fed. R. Civ. P. 5.1(b)
[102] Fed. R. Civ. P. 5.1(c)
[103] *Clontech*, 406 F.3d at 1352 ("When the statute refers to an "unpatented article" the statute means that the article in question is not covered by at least one claim of each patent with which the article is marked.")
[104] *Clontech*, 406 F.3d at 1356–57

not shift such costs to the public, because the public is entitled to rely on patent markings that are found in the marketplace.[105]  Since Calico's marking has no disclaiming language like the court suggested in *Schwebel*,[106] it is a representation to the public that Calico's products were protected "by at least one claim of each patent with which the article is marked" — which is false as a matter of law.[107]

### Conclusion

For the reasons discussed above, the defendants' motions challenging the sufficiency of the complaint must be denied.  In the alternative, if the court finds that the complaint is not sufficiently pled, then it must grant leave to amend.

Date: October 29, 2010                    Mount & Stoelker, P.C.,
                                                         /s/ Dan Fingerman
                                          Counsel for San Francisco Technology Inc.

Mount & Stoelker, P.C.
RiverPark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000

---

[105] *Clontech*, 406 F.3d at 1356–57; *Forest Group 1*, 590 F.3d at 1302–1303
[106] *See Schwebel*, 40 F. at 479
[107] *Clontech*, 406 F.3d at 1352; *Pequignot 4*, 608 F.3d at 1361

1

## Certificate of Service

2     The undersigned certifies that on October 26, 2010, the foregoing document was filed with

3 the Clerk of the U.S. District Court for the Northern District of California, using the court's electronic

4 filing system (ECF), in compliance with Civil L.R. 5-4 and General Order 45.  The ECF system

5 serves a "Notice of Electronic Filing" to all parties and counsel who have appeared in this action,

6 who have consented under Civil L.R. 5-5 and General Order 45 to accept that Notice as service of

7 this document.

8 Date: October 29, 2010                    Mount & Stoelker, P.C.,

9                                                            /s/ Dan Fingerman
                                                   Counsel for San Francisco Technology Inc.

10 Z:\CLIENTS\F CLIENTS\False003\Attorney_Notes\Drafts\Consolidated Opposition to Motions to Dismiss (v6).doc

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOUNT & STOELKER, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000