the public incurring the cost and time associated with this enforcement.

## COUNT VII - U.S. PATENT NO. 4,782,622 - EXPIRED PATENT

116.    For this Count, Relator repeats the allegations of Paragraphs 1-11.

117.    U.S. Patent No. 4,782,622 ("the '622 patent"), entitled "Trap-guard for Vermin Repellant Destruction" issued on November 8, 1988.

118.    Defendant marks and advertises, and has marked and advertised, products with the '622 patent number, including, but not limited to, the Perky-Pet AntGuard for Hummingbird Feeders bird feeder, depicted at Exhibit "G."

119.    Defendant causes or contributes to the marking and advertising, of products with the '622 patent number, including, but not limited to, the products identified in paragraph 120.

120.    The '622 patent is an expired patent.

121.    Upon information and belief, the '622 patent expired on November 20, 2007.

122.    Defendant is a sophisticated company and has many decades of experience applying for, obtaining, maintaining and litigating patents. Defendant also has extensive experience manufacturing products and either marking or not marking them with words or numbers indicating that such products are protected by patents or pending applications.

123.    Upon information and belief, Defendant and/or its predecessors (including its patent counsel) received notice that the '622 patent would expire on November 20, 2007.

124.    Defendant knew or should have known that the term of the '622 patent expired on November 20, 2007.

125.    Defendant does not own or have a license to the '622 patent and is not paying maintenance fees to the United States Patent and Trademark Office to maintain the '622 patent.

126.    Upon information and belief, Defendant knew or should have known that the '622

patent had already expired at the same time Defendant was marking and advertising products with the '622 patent, including the products identified in Paragraph 120.

127.    Defendant knew it did not own or have a license to the '622 patent at the same time Defendant was marking and advertising products with the '622 patent, including the production identified in Paragraph 120

128.    Defendant knows, or at least reasonably should know, that the '622 patent does not cover the products identified in Paragraph 120 or any products whatsoever.

129.    Each offense of false marking caused by Defendant has and continues to deceive the public and deter competition to the financial benefit of Defendant.

130.    Defendant could have no reasonable belief that it was proper to mark and advertise products with the expired '622 patent number, and the false marking was done with intent to deceive the public by, including, but not limited to, misusing its patent rights to extend the term of its patent and inhibiting competition.

131.    For at least the reasons set forth herein, Defendant has wrongfully and illegally advertised patent rights which it does not possess, and, as a result, has likely benefited in at least maintaining its market share with respect to the herein described bird feeder in the marketplace.

132.    For at least the reasons set forth herein, Defendant has wrongfully and illegally advertised patent rights which it does not possess, and, as a result, has likely caused the retail price of its products described herein to be inflated above normal market levels, and has caused Plaintiff, a consumer of Defendant's products, to pay this inflated price.

133.    The public deception, and/or competitive harm caused by each of Defendant's false markings has and continues to harm the United States, including Relator, a representative of the public incurring the cost and time associated with this enforcement.

## COUNT VIII - U.S. PATENT NO. 4,890,416 - EXPIRED PATENT

134.   For this Count, Relator repeats the allegations of Paragraphs 1-11.

135.   U.S. Patent No. 4,890,416 ("the '416 patent"), entitled "Trap-Guard for Vermin Repellant Destruction" issued on January 2, 1990.

136.   Defendant marks and advertises, and has marked and advertised, products with the '416 patent number, including, but not limited to, the Perky-Pet AntGuard for Hummingbird Feeders bird feeder, depicted at Exhibit "H."

137.   Defendant causes or contributes to the marking and advertising, of products with the '416 patent number, including, but not limited to, the products identified in paragraph 138.

138.   The '416 patent is an expired patent.

139.   Upon information and belief, the '416 patent expired on November 8, 2005.

140.   Defendant is a sophisticated company and has many decades of experience applying for, obtaining, maintaining and litigating patents. Defendant also has extensive experience manufacturing products and either marking or not marking them with words or numbers indicating that such products are protected by patents or pending applications.

141.   Upon information and belief, Defendant and/or its predecessors (including its patent counsel) received notice that the '416 patent would expire on November 8, 2005.

142.   Defendant knew or should have known that the term of the '416 patent expired on November 8, 2005.

143.   Defendant does not own or have a license to the '416 patent and is not paying maintenance fees to the United States Patent and Trademark Office to maintain the '416 patent.

144.   Upon information and belief, Defendant knew or should have known that the '416 patent had already expired at the same time Defendant was marking and advertising products

with the '900 patent, including the products identified in Paragraph 138.

145.    Defendant knew it did not own or have a license to the '416 patent at the same time Defendant was marking and advertising products with the '416 patent, including the production identified in Paragraph 138

146.    Defendant knows, or at least reasonably should know, that the '416 patent does not cover the products identified in Paragraph 138 or any products whatsoever.

147.    Each offense of false marking caused by Defendant has and continues to deceive the public and deter competition to the financial benefit of Defendant.

148.    Defendant could have no reasonable belief that it was proper to mark and advertise products with the expired '416 patent number, and the false marking was done with intent to deceive the public by, including, but not limited to, misusing its patent rights to extend the term of its patent and inhibiting competition.

149.    For at least the reasons set forth herein, Defendant has wrongfully and illegally advertised patent rights which it does not possess, and, as a result, has likely benefited in at least maintaining its market share with respect to the herein described bird feeder in the marketplace.

150.    For at least the reasons set forth herein, Defendant has wrongfully and illegally advertised patent rights which it does not possess, and, as a result, has likely caused the retail price of its products described herein to be inflated above normal market levels, and has caused Plaintiff, a consumer of Defendant's products, to pay this inflated price.

151.    The public deception, and/or competitive harm caused by each of Defendant's false markings has and continues to harm the United States, including Relator, a representative of the public incurring the cost and time associated with this enforcement.

**PRAYER FOR RELIEF**

WHEREFORE, pursuant to 35 U.S.C. § 292, Relator respectfully requests:

A.     A judgment that Defendant has falsely marked products in violation of 35 U.S.C. § 292;

B.     An accounting of the number, sales and revenue of any falsely marked articles not presented at trial;

C.     A judgment in favor of Relator that Defendant has falsely marked items in violation of 35 U.S.C. § 292(a)-(b) in the form of a civil fine of $500 per falsely marked article, or an alternative amount, as set by the Court, one-half of any such award to be paid to the United States;

D.     An Award of pre-judgment and post-judgment interest on any monetary award;

E.     An injunction prohibiting Defendant, and its officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from violating 35 U.S.C. § 292(a);

F.     An award of attorneys fees, costs, other expenses and an enhancement of damages and penalties; and

G.     All other just and equitable relief.

## JURY DEMAND

Relator requests trial by jury on all appropriate issues.

Dated: October 14, 2010                    Respectfully submitted,

                                           **KENT, GOOD, ANDERSON & BUSH, P.C.**
                                           Woodgate I, Suite 200
                                           1121 E.S.E. Loop 323
                                           Tyler, Texas 75701
                                           (903) 579-7500 (Office)
                                           (903) 581-3701 (Fax)


                                           By: */s/ Ken W. Good*
                                           KEN W. GOOD
                                           State Bar No. 08139200

                                           ATTORNEYS FOR RELATOR


## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 14th day of October 2010. Any other counsel of record will be served by first class U.S. mail on this same date.

                                           */s/ Ken W. Good*





EXHIBIT "A"





**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| PATENT GROUP, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | CIVIL ACTION NO. 6:10-CV-00346 |
| v. | § | |
| | § | JURY |
| WOODSTREAM CORPORATION, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## ORDER OF DISMISSAL WITH PREJUDICE

The Court, having considered the Stipulated Dismissal (Doc. No. 11) filed by the Parties

herein, finds that the Parties have reached a settlement and that this action should be dismissed

with prejudice to the refiling of same.

The Court hereby HOLDS and ORDERS that any and all claims by Patent Group on

behalf of itself, the United States and the general public, regarding Woodstream's alleged false

marking or advertising or causing or contributing to the false marking or advertising under 35

U.S.C. § 292 are fully resolved and hereby dismissed with prejudice with respect to the

following products manufactured and sold by Woodstream:  Perky-Pet Brand No. 3362, Squirrel-

Be-Gone; Fi-Shock™ 4" Ribbed Tube Insulators, Model 500-540; Snake-A-Way snake

repellent, Models DT364, DT3645, DT364B, DT363, and DT362; Mouse Snap Trap animal trap,

Models M032, M035, and M038; Safer Brand 3-in-1 garden spray, Model 5462; and Perky-Pet

Brand AntGuard, Model 242.

The Court hereby HOLDS and ORDERS that compliance with the terms of the

Settlement Agreement between the Parties fully resolves any issue relating to Woodstream's

marking of its Perky-Pet Brand No. 3362, Squirrel-Be-Gone with U.S. Patent No. 4,646,686.

The Court hereby HOLDS and ORDERS that compliance with the terms of the Settlement Agreement between the Parties fully resolves any issue relating to Woodstream's marking of its Fi-Shock™ 4" Ribbed Tube Insulators, Model 500-540 with U.S. Patent No. 4,580,767.

The Court hereby HOLDS and ORDERS that compliance with the terms of the Settlement Agreement between the Parties fully resolves any issue relating to Woodstream's marking of its Snake-A-Way snake repellent, Models DT364, DT3645, DT364B, DT363, and DT362, with U.S. Patent No. 5,104,900.

The Court hereby HOLDS and ORDERS that compliance with the terms of the Settlement Agreement between the Parties fully resolves any issue relating to Woodstream's marking of its Mouse Snap Trap animal trap, Models M032, M035, and M038, with U.S. Patent No. 4,245,423 and No. D300,163.

The Court hereby HOLDS and ORDERS that compliance with the terms of the Settlement Agreement between the Parties fully resolves any issue relating to Woodstream's marking of its Safer Brand 3-in-1 garden spray, Model 5462, with U.S. Patent No. 5,093,124.

The Court hereby HOLDS and ORDERS that compliance with the terms of the Settlement Agreement between the Parties fully resolves any issue relating to Woodstream's marking of its Perky-Pet Brand AntGuard, Model 242, with U.S. Patent No. 4,782,662 and No. 4,890,416.

The Court hereby HOLDS and ORDRES that Woodstream and those acting in concert therewith and/or selling products manufactured by Woodstream may have a reasonable period of time in which to sell, without further liability, inventory of the following products manufactured on or before the date of this Order:  Perky-Pet Brand No. 3362, Squirrel-Be-Gone; Fi-Shock™

4" Ribbed Tube Insulators, Model 500-540; Snake-A-Way snake repellent, Models DT364,

DT3645, DT364B, DT363, and DT362; Mouse Snap Trap animal trap, Models M032, M035,

and M038; Safer Brand 3-in-1 garden spray, Model 5462; and Perky-Pet Brand AntGuard,

Model 242.

The Court hereby HOLDS and ORDERS that the Patent Group has the standing to act on

behalf of the United States and the General Public pursuant to 35 U.S.C. § 292.

The Court hereby HOLDS and ORDERS that the Patent Group has a valid statutory

partial assignment of rights from the United States to pursuant to 35 U.S.C. § 292.

The Court hereby HOLDS and ORDERS that the claims asserted in this action by the

Patent Group on behalf of the United States and the general public are hereby dismissed with

prejudice.

IT IS SO ORDERED.

**SIGNED this 27th day of October, 2010.**

MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE

# MEMORANDUM

**TO:**      Patent Group, LLC

**FROM:**   Ken W. Good

**DATE:**   October 27, 2010

**RE:**      Civil Action No. 6:10-cv-00346; Patent Group, LLC vs. Woodstream Corporation; In the United States District Court for the Eastern District of Texas, Tyler Division

**Settlement:**      REDACTED

---

Listed below is a breakdown of expenses for the above-referenced case:

Settlement Amount:

50% United States Government
50% Patent Group and Attorneys

REDACTED

**APPROVED:**

**PATENT GROUP, LLC**

Mike Collins

**KENT, GOOD, ANDERSON & BUSH, P.C.**

Ken W. Good

## SETTLEMENT AND RELEASE AGREEMENT

This SETTLEMENT AND RELEASE AGREEMENT ("Agreement") is entered into this 14th day of October 2010 ("Effective Date"), by and between, Patent Group, LLC ("Relator"), a Texas limited liability company, having a principal place of business at 100 N. College Avenue, Suite 1504, Tyler, Texas 75702 and Woodstream Corporation, a Pennsylvania corporation ("Defendant"), with its principal place of business at 69 N. Locust Street, Lititz, PA 17543 (Relator and Defendant may be referred to individually as "Party" and collectively as "Parties").

### RECITALS

WHEREAS, Relator has filed an action styled *Patent Group, LLC v. Woodstream Corporation* in the United States District Court for the Eastern District of Texas (Civil Action No. 6:10-CV-00346), alleging that the Defendant has falsely marked certain products ("**Litigation**");

WHEREAS, Relator purports to assert the claims in the Litigation on behalf of the United States of America;

WHEREAS, Defendant denies liability in the Litigation; and

WHEREAS, the Parties wish to settle all claims that were, or could have been, asserted by either Party against the other in the Litigation without further time and expense of litigation or other legal action.

NOW, THEREFORE, in consideration of the above premises and mutual covenants contained herein and other good and valuable consideration, the sufficiency of which is agreed upon, the Parties agree as follows:

### ARTICLE 1

### DEFINITIONS

As used in this Agreement, the following terms shall have the following meanings:

1.1 "**Affiliates**" means and includes, with respect to a Party, any corporation, company, partnership, joint venture, limited liability company, association, firm, subsidiary, or other Entity formerly, now, or hereafter controlled by, under common control with, or controlling such Party, where "control" means possessing, directly or indirectly, the power to direct or cause the direction of the management policies of an Entity (whether through contract or otherwise), it being understood that the ownership of securities, instruments, or other interests of fifty percent (50%) or more of the outstanding voting power of an Entity shall conclusively constitute control for purposes of this definition (or less if the country of incorporation or the country of domicile of the entity requires that foreign ownership be less than fifty percent (50%), but only to the extent that the maximum allowable amount of securities instruments, or other

interests is owned); provided, however, that an entity shall be considered an Affiliate of a Party only for the periods where such control exists.

1.2  **"Claims"** means any and all actions, causes of action, claims, demands, liabilities, losses, damages, attorneys' fees, court costs, or any other form of claim or compensation, known or unknown, whether in law or in equity.

1.3  **"Entity"** means any individual, trust, corporation, company, partnership, joint venture, limited liability company, association, firm, unincorporated organization or other legal or governmental entity.

1.4  **"Damages"** means damages, losses, costs or expenses.

1.5  **"Defendant Entity"** means Defendant and each of its Affiliates.

1.6  **"Defendant Products"** means Perky-Pet Brand No. 3362, Squirrel-Be-Gone; Fi-Shock™ 4" Ribbed Tube Insulators, Model 500-540; Snake-A-Way snake repellent; Mouse Snap Trap animal trap; Safer Brand 3-in-1 garden spray; and Perky-Pet AntGuard for Hummingbird Feeders.

1.7  **"Defendant Releasing Entities"** means Defendant and its predecessors and successors, and Affiliates.

1.8  **"False Marking"** means any alleged violation of 35 U.S.C. § 292.

1.9  **"Released Third Parties"** means individually and collectively the vendors, distributors, developers, resellers, contractors, consultants, directors, officers, employees, agents, representatives, attorneys, insurers, and servants of, by, or on behalf of any of the Defendant Entities with respect to their involvement with any Defendant Product.

1.10  **"Relator Entities"** means Relator and each of its Affiliates.

1.11  **"Relator Releasing Parties"** means Relator, and its predecessors, successors and Affiliates.

1.12  **"Releases"** means to fully and forever irrevocably and unconditionally release, acquit, and discharge.

1.13  **"Third Party"** means an Entity other than a Party to this Agreement, or an Affiliate of a Party to this Agreement.

## ARTICLE 2

## RELEASES AND COVENANTS

2.1  **Release to Defendant.**  The Relator Releasing Parties hereby Release the Defendant Entities and the Released Third Parties from any and all Claims accruing before, on, or after the Effective Date, related in whole or in part to the Litigation, including without

limitation any act of past, present, or future False Marking of the Defendant's Products, and any claim that is or would have been within the scope of the covenant granted in Section 2.2 (Covenant Not to Sue). This release expressly covers any and all claims that the Relator Releasing Parties asserted, or could have asserted, on behalf of the United States of America concerning any alleged False Marking of Defendant's Products.

2.2 **Covenant Not to Sue.** The Relator Releasing Parties agree that they will never assert, pursue, maintain, encourage, support, assist, or join in any action or litigation asserting any Claim against a Defendant Entity or any of the Released Third Parties arising out of any alleged False Marking of the Defendant's Products. This covenant attaches to and is transferred with each of the Defendant's Products, and passes to each and every such released Defendant Entity or Released Third Party with regard to such Defendant's Products. This covenant expressly covers any and all claims that the Relator Releasing Parties asserted, or could have asserted, on behalf of the United States of America concerning any alleged False Marking of Defendant's Products.

2.3 **Release to Relator.** Defendant Releasing Entities, hereby Releases Relator and its directors and officers from, and covenants not to sue Relator and its directors and officers, for any and all Claims relating to, based on, or arising out of the Litigation.

2.4 **Agreement Obligations not Released.** None of the releases or covenants not to sue herein releases any Party or its Affiliates from its respective obligations under this Agreement or prevents any Party or any of its Affiliates from enforcing the terms and conditions of this Agreement against the other Party or its Affiliates.

2.5 **Releases.** The releases in this Agreement include an express, informed, knowing and voluntary waiver and relinquishment to the fullest extent permitted by law. In this connection, the Parties acknowledge that they may have sustained Damages that are presently unknown and unsuspected and that such Damages as may have been sustained may give rise to additional Damages in the future. The Parties hereto further acknowledge that they have negotiated this Agreement taking into account presently unsuspected and unknown Claims, and the Parties hereto voluntarily and with full knowledge of its significance, expressly waive and relinquish any and all rights they may have under any state or federal statute, rule, or common law principle, in law or equity, relating to limitations on general releases. The Parties voluntarily and with full knowledge of its significance, expressly waive and relinquish any and all rights they may have under any state or federal statute, rule or common law principle, in law or equity, relating to limitations on releases. Specifically, each Party hereby expressly waives any rights it may have under California Civil Code Section 1542 (or any other law) which provides that:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.**

# ARTICLE 3

## CONSIDERATION

3.1 **Consideration.** In consideration of the releases and covenants granted in this Agreement and the dismissal by Relator of the Litigation hereunder, Defendant agrees to pay to Relator a one-time, non-refundable payment in the amount of
Dollars and no cents) (the "**Payment**"). The Payment will be made by Defendant to Relator by wire transfer to the account set forth in **Exhibit B** within 10 days of the Effective Date. Upon the Payment being made, Relator shall transfer 50% of the Payment, or            to the United States Government, pursuant to 35 U.S.C. § 292. Relator expressly assumes responsibility for assuring that said amount is transferred to the appropriate person or entity representing the United States of America.

3.2 **Total Compensation.** The Payment will be the total compensation to Relator and the United States of America for all rights granted in this Agreement, and no additional payment will be made to Relator, the United States of America, or any other person or entity by Defendant in connection with such rights.

3.3 **Tax Liability.** All taxes imposed as a result of the existence of this Agreement or the performance hereunder shall be paid by the Party required to do so by applicable law.

3.4 **Costs and Attorneys' Fees.** Each Party agrees that it shall not bear the costs and attorneys' fees of the other Party that relate to the Lawsuit or to the negotiation of this Agreement.

# ARTICLE 4

## DISMISSAL OF LITIGATION

4.1 Within five (5) court days after Defendant pays under Section 3.1 (Consideration) above, the Parties shall cause their respective counsel to execute and file the stipulated motion in the form set forth in **Exhibit A** dismissing with prejudice all claims and counterclaims between the Parties in the Litigation. The Parties shall promptly proceed with any and all additional procedures needed to dismiss with prejudice the Litigation.

4.2 The Parties acknowledge and agree that this Agreement is enforceable according to its terms with respect to final dismissal with prejudice of all claims and counterclaims in the Litigation.

# ARTICLE 5

## ASSIGNMENT AND BINDING EFFECT

5.1 **Binding Effect.** This Agreement shall be binding upon, inure to the benefit of, and be enforceable by the Parties and their predecessors, successors, heirs, and permitted assigns.

## ARTICLE 6

## WARRANTIES AND REPRESENTATIONS

6.1 **Defendant Representations and Warranties.** Defendant represents and warrants that:

6.1.1 it has the right to enter into this Agreement with Relator. Defendant represents and warrants that its execution hereof has been duly authorized by all necessary corporate action;

6.1.2 in no way (directly or indirectly, by implication or under any legal theory or otherwise) has Defendant negotiated with any other Entity, other than with Relator;

6.2 **Relator Representations and Warranties.** The Relator Releasing Parties represent and warrant that:

6.2.1 Relator has all requisite legal right, power, and authority to execute, deliver, and perform this Agreement;

6.2.2 the Relator Releasing Parties have not entered into, and shall not enter into, any other agreement that would interfere with the obligations and immunities set forth in this Agreement during the term of this Agreement; and

6.2.3 this Agreement is valid, binding and enforceable in accordance with its terms.

6.3 **DISCLAIMER OF WARRANTIES.** EXCEPT FOR THE EXPRESS WARRANTIES SET FORTH IN THIS AGREEMENT, THE PARTIES MAKE NO EXPRESS REPRESENTATIONS AND GRANT NO WARRANTIES, EXPRESS OR IMPLIED, EITHER IN FACT OR BY OPERATION OF LAW, BY STATUE OR OTHERWISE.

## ARTICLE 7

## CONFIDENTIALITY

7.1 **Confidentiality.** No Party shall disclose the terms of this Agreement except:

7.1.1 with the prior written consent of the other Party;

7.1.2 in response to a valid subpoena or as otherwise may be required by law, regulation, or order of a governmental authority of competent jurisdiction;

7.1.3 for the purposes of disclosure in connection with the Securities and Exchange Act of 1934, as amended, the Securities Act of 1933, as amended, and any other reports filed with the Securities and Exchange Commission, or any other filings, reports or disclosures that may be required under applicable laws or regulations;

7.1.4    to a Party's employees, agents, officers, or directors, as reasonably required for the conduct of the Party's business;

7.1.5    to a Party's lenders, accountants, legal counsel, tax advisors and other financial and legal advisors, subject to obligations of confidentiality or privilege at least as stringent as those contained herein;

7.1.6    as required during the course of litigation and subject to protective order; in which event the Party would seek to have the production protected under a protective order with an "Attorneys Eyes Only" or higher confidentiality designation;  or

7.1.7    with obligations of confidentiality at least as stringent as those contained herein, to a counterparty in connection with a proposed merger, acquisition, financing or similar transaction; provided, however, that before any such disclosure pursuant to sub-section 7.1.2 or 7.1.6 hereof, take all reasonable actions in an effort to minimize the nature and extent of such disclosure.

# ARTICLE 8

## MISCELLANEOUS PROVISIONS

8.1    **Notices**.  All notices required or permitted to be given hereunder shall be in writing and shall be deemed delivered: (a) upon receipt if delivered by hand; (b) the next day after being sent by prepaid, nationally-recognized, overnight air courier; and/or (c) five (5) business days after being sent by registered or certified airmail, return receipt required, postage prepaid.  All notices shall be addressed as follows:

**If to Relator:**

        Mike Collins
c/o    Patent Group, LLC
        100 N. College Avenue, Suite 1504
        Tyler, Texas 75702-7245
        Facsimile:  903-526-6453

Copy to:

        Ken W. Good
        Woodgate I, Suite 200
        1121 E.S.E. Loop 323
        Tyler, Texas 75701
        Facsimile:  (903) 581-3701

**If to Defendant:**

        Steve Polisoto
c/o    Woodstream Corporation

69 N. Locust Street
Lititz, PA 17543
Facsimile: 717-626-1912

Copy to:

Morgan, Lewis & Bockius
1000 Louisiana, Suite 4000
Houston, TX 77010
Attn: C. Erik Hawes
Facsimile: (713) 890-5001

or to such other individual or address as either Party may specify by notice hereunder.

8.2  **Publicity.** Neither Party will issue a press release or any other announcement regarding this Agreement or the relationship contemplated herein unless both Parties provide prior consent in writing, except as permitted by Section 7.1 (Confidentiality). The Parties shall direct their representatives not to make any disclosures of the terms of this Agreement, except as permitted by Section 7.1 (Confidentiality). Notwithstanding the foregoing, upon inquiry, either Party may state that the Parties have entered into a settlement and release agreement. Further, in the context of private discussions with any Released Third Party, a Defendant Entity may inform such Released Third Party of the rights and obligations applicable to such Released Third Party hereunder.

8.3  **Governing Law.** This Agreement and matters connected with the performance thereof shall be construed, interpreted, applied, and governed in all respects in accordance with the laws of the United States of America and the State of Pennsylvania, without reference to conflict of laws principles. Notwithstanding the foregoing, the parties agree that the persons within the scope of the release of ARTICLE 2 (Releases and Covenants) shall be governed by New York Law. It is expressly the intent of the Parties that such released persons need not be expressly named to the extent required by Pennsylvania law.

8.4  **Mutual Assurances.** Each Party hereby covenants and agrees that it shall execute and deliver such documents and instruments, take or cause to be taken such other actions and provide such assurances as are reasonably necessary or appropriate to carry out the purposes and intent of this Agreement.

8.5  **Amendment.** This Agreement may not be amended or modified, except by a writing signed by all Parties.

8.6  **Sophisticated Parties Represented by Counsel.** The Parties each acknowledge, accept, warrant, and represent that: (i) they are sophisticated Entities represented at all relevant times during the negotiation and execution of this Agreement by counsel of their choice, and that they have executed this Agreement with the consent and on the advice of such independent legal counsel; and (ii) they and their counsel have determined through independent investigation and robust, arm's-length negotiation that the terms of this Agreement shall exclusively embody and govern the subject matter of this Agreement.

-7-

8.7 **Severability**. If any provision of this Agreement is held by a court of competent jurisdiction to be illegal or unenforceable or invalid under any applicable statute or rule of law, such court is authorized to modify such provision to the minimum extent necessary to make it enforceable and valid, so that the remainder of this Agreement will continue in full force and effect and be enforceable. The Parties agree to negotiate in good faith an enforceable substitute provision for any invalid or unenforceable provision that most nearly achieves the intent of such provision.

8.8 **Entire Agreement**. This Agreement, including all Exhibits attached hereto, embodies the entire and only understanding of each of them with respect to the subject matter of the Agreement, and merges, supersedes and cancels all previous representations, warranties, assurances, conditions, definitions, understandings or any other statement, express, implied, or arising by operation of law, whether oral or written, whether by omission or commission between and among them with respect to the subject matter of the Agreement.

8.9 **Waiver**. No waiver of any breach of any provisions of this Agreement shall be construed a waiver of or consent to any previous or subsequent breach of the same or any other provision.

8.10 **Construction**. Any rule of construction to the effect that ambiguities are to be resolved against the drafting party will not be applied in the construction or interpretation of this Agreement. As used in this Agreement, the words "include" and "including" and variations thereof, will not be deemed to be terms of limitation, but rather will be deemed to be followed by the words "but not limited to" or "without limitation." This Agreement is in the English language only, which language shall be controlling in all respects, and all notices under this Agreement shall be in the English language. For purposes of construction, the singular includes the plural and vice versa.

8.11 **Headings**. The article, section and subsection headings used in this Agreement are intended for reference purposes only and shall not affect the interpretation or construction of any provision of this Agreement.

8.12 **Counterparts**. This Agreement may be executed in counterparts or duplicate originals, both of which shall be regarded as one and the same instrument, and which shall be the official and governing version in the interpretation of this Agreement. This Agreement may be executed by facsimile signatures and such signatures shall be deemed to bind each Party as if they were original signatures.

8.13 **Non-Agency**. Nothing in this Agreement is intended or shall be deemed to constitute a partnership, agency, employer-employee, or joint venture relationship between Defendant and Relator. Neither Defendant nor Relator shall incur any debt or make any commitment for each other. There is no fiduciary duty or special relationship of any kind between Defendant and Relator. Defendant and Relator each expressly disclaim any reliance on any act, word, or deed of the other in entering into this Agreement.

8.14 **Force Majeure**. The failure of a Party hereunder to perform any obligations, due to governmental action, law or regulation, or due to events, such as war, act of public enemy,

strikes or other labor disputes, fire, flood, acts of God, or any similar cause beyond the reasonable control of such Party, is excused for as long as said cause constitutes to exist. The Party prevented from performing shall promptly notify the other Party of such non-performance and its expected duration, and shall use all reasonable efforts to overcome the cause thereof as soon as practicable.

8.15 **Notice of Breach.** The Parties agree that before taking any legal action based on a material breach of this Agreement, the Party claiming breach will: (a) provide notice to the alleged breaching Party of such breach; and (b) allow thirty (30) days for that Party to cure the alleged material breach. Subsequent to this cure period, if the material breach is uncured, the Party claiming breach shall have all remedies available to it under applicable law against the breaching Party.

IN WITNESS WHEREOF, the Parties acknowledge their agreement and consent to the terms and conditions set forth through their respective signatures as contained below:

Patent Group, LLC

By: _____

Name: Michael J. Collins

Title: President

Woodstream Corporation

By: _____

Name: Harry E. Whaley

Title: President & CEO

**EXHIBIT A**

**STIPULATED DISMISSAL WITH PREJUDICE**

**and**

**ORDER OF DISMISSAL WITH PREJUDICE**

(see attached)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| PATENT GROUP, LLC, | § | |
| | § | |
| Relator, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:10-CV-00346 |
| | § | |
| WOODSTREAM CORPORATION, | § | JURY |
| | § | |
| Defendant. | § | |
| | § | |

### STIPULATED DISMISSAL WITH PREJUDICE

Pursuant to Rule 41(a) of the Federal Rules of Civil Procedure and the terms of a separate Settlement and Release Agreement, the Relator, Patent Group, LLC ("Relator") and Defendant Woodstream Corporation ("Defendant"), have agreed to settle, adjust, and compromise all claims and counterclaims against each other in the above-captioned action. The parties, therefore, stipulated to dismiss all claims by Relator against Defendant made therein with prejudice to the refiling the same.

Relator and Defendant further stipulate that all costs and expenses relating to this litigation (including attorney and expert fees and expenses) shall be borne solely by the party incurring the same.

A proposed Order accompanies this motion.

AGREED:

Dated:  October 25, 2010

Respectfully submitted,

MORGAN LEWIS & BOCKIUS LLP

By:  /s/  C. Erik Hawes_____
       C. Erik Hawes
       State Bar No. 00791479
       1000 Louisiana St., Suite 4200
       Houston, Texas 77002
       Tel:  713.890.5000
       Fax: 713.890.5001
       Email:   ehawes@morganlewis.com

ATTORNEYS FOR DEFENDANT
WOODSTREAM


KENT, GOOD, ANDERSON & BUSH, P.C.

By:  /s/ Ken W. Good_____
       Ken W. Good
       State Bar No. 08139200
       Woodgate I, Suite 200
       1121 E.S.E. Loop 323
       Tyler, Texas 75701
       Tel:  (903) 579-7500
       Fax:  (903) 581-3701

ATTORNEYS FOR RELATOR
PATENT GROUP, LLC

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| PATENT GROUP, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:10-CV-00346 |
| | § | |
| WOODSTREAM CORPORATION, | § | JURY |
| | § | |
| Defendant. | § | |
| | § | |

## ORDER OF DISMISSAL WITH PREJUDICE

The Court, having considered the Stipulated Dismissal (Doc. No. 11) filed by the Parties

herein, finds that the Parties have reached a settlement and that this action should be dismissed

with prejudice to the refiling of same.

The Court hereby HOLDS and ORDERS that any and all claims by Patent Group on

behalf of itself, the United States and the general public, regarding Woodstream's alleged false

marking or advertising or causing or contributing to the false marking or advertising under 35

U.S.C. § 292 are fully resolved and hereby dismissed with prejudice with respect to the

following products manufactured and sold by Woodstream:  Perky-Pet Brand No. 3362, Squirrel-

Be-Gone; Fi-Shock™ 4" Ribbed Tube Insulators, Model 500-540; Snake-A-Way snake

repellent, Models DT364, DT3645, DT364B, DT363, and DT362; Mouse Snap Trap animal trap,

Models M032, M035, and M038; Safer Brand 3-in-1 garden spray, Model 5462; and Perky-Pet

Brand AntGuard, Model 242.

The Court hereby HOLDS and ORDERS that compliance with the terms of the

Settlement Agreement between the Parties fully resolves any issue relating to Woodstream's

marking of its Perky-Pet Brand No. 3362, Squirrel-Be-Gone with U.S. Patent No. 4,646,686.

The Court hereby HOLDS and ORDERS that compliance with the terms of the Settlement Agreement between the Parties fully resolves any issue relating to Woodstream's marking of its Fi-Shock™ 4" Ribbed Tube Insulators, Model 500-540 with U.S. Patent No. 4,580,767.

The Court hereby HOLDS and ORDERS that compliance with the terms of the Settlement Agreement between the Parties fully resolves any issue relating to Woodstream's marking of its Snake-A-Way snake repellent, Models DT364, DT3645, DT364B, DT363, and DT362, with U.S. Patent No. 5,104,900.

The Court hereby HOLDS and ORDERS that compliance with the terms of the Settlement Agreement between the Parties fully resolves any issue relating to Woodstream's marking of its Mouse Snap Trap animal trap, Models M032, M035, and M038, with U.S. Patent No. 4,245,423 and No. D300,163.

The Court hereby HOLDS and ORDERS that compliance with the terms of the Settlement Agreement between the Parties fully resolves any issue relating to Woodstream's marking of its Safer Brand 3-in-1 garden spray, Model 5462, with U.S. Patent No. 5,093,124.

The Court hereby HOLDS and ORDERS that compliance with the terms of the Settlement Agreement between the Parties fully resolves any issue relating to Woodstream's marking of its Perky-Pet Brand AntGuard, Model 242, with U.S. Patent No. 4,782,662 and No. 4,890,416.

The Court hereby HOLDS and ORDRES that Woodstream and those acting in concert therewith and/or selling products manufactured by Woodstream may have a reasonable period of time in which to sell, without further liability, inventory of the following products manufactured on or before the date of this Order:  Perky-Pet Brand No. 3362, Squirrel-Be-Gone; Fi-Shock™

4" Ribbed Tube Insulators, Model 500-540; Snake-A-Way snake repellent, Models DT364, DT3645, DT364B, DT363, and DT362; Mouse Snap Trap animal trap, Models M032, M035, and M038; Safer Brand 3-in-1 garden spray, Model 5462; and Perky-Pet Brand AntGuard, Model 242.

The Court hereby HOLDS and ORDERS that the Patent Group has the standing to act on behalf of the United States and the General Public pursuant to 35 U.S.C. § 292.

The Court hereby HOLDS and ORDERS that the Patent Group has a valid statutory partial assignment of rights from the United States to pursuant to 35 U.S.C. § 292.

The Court hereby HOLDS and ORDERS that the claims asserted in this action by the Patent Group on behalf of the United States and the general public are hereby dismissed with prejudice.

IT IS SO ORDERED.

**SIGNED this 27th day of October, 2010.**

MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE

TEXAS BANK AND TRUST
LONGVIEW TEXAS 75606

                    NOTICE OF INCOMING WIRE TRANSFER              10/20/10

Funds in the amount of $
WOODSTREAM CORPORATION                       have been wired from
to account

Transfer fee.......$.00


REDACTED

        IOLTA FOUNDATION TRUST ACCT
        KENT GOOD AND ANDERSON PC
        1121 ESE LOOP 323 STE 200
        TYLER TX 75701

KENT, GOOD, ANDERSON & BUSH P.C.
IOLTA ACCOUNT
1121 E.S.E. LOOP 323, SUITE 200
TYLER, TX 75701
PH. (903) 579-7500

2039

PAY
TO THE
ORDER OF ___ United States Department ___

DATE 12-28-00

$

_____ DOLLARS

TEXAS BANK AND TRUST
300 E. Whaley • P.O. Box 3188
Longview, TX 75606 • 903-237-5500

FOR _For the vs. Washburn_

Don Kent

⑈"OO2O39⑈" ⑈:111923238⑈:

88-2323-1119

REDACTED